UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

F I L E [D]

FEB 1 9 2019

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

SHAWN V. GONZALEZ,                          )
                                            )
                                            )
            Plaintiff,                      ) Civil Action No. 3:18cv459
v.                                          )
                                            )
                                            )
SONNY PERDUE, SECRETARY, DEPARTMENT OF      )
AGRICULTURE,                                )
                                            )
                                            )
            Defendant.                      )
_____)

## SECOND AMENDED COMPLAINT FOR CIVIL ACTION NUMBER 3:18cv459

I, Shawn V. Gonzalez, ("Plaintiff"), an honorably discharged Disabled Veteran of the United States Marine Corps, formerly employed as a Single Family Housing ("SFH") Area Technician for the United States Department of Agriculture ("the USDA", "the Agency", or "the Department") within Rural Development ("RD") in the Single Family Housing ("SFH") unit located at 1606 Santa Rosa Road Richmond, Virginia 23229. A jury trial is requested.

### I.    STATEMENT OF FACTS

1. As *pro se*, I bring this Complaint against Secretary of the United States Department of Agriculture Sonny Perdue, in his official capacity. In that capacity, Defendant Perdue is responsible for the relevant actions of his appointed employees, representatives and employees acting on his behalf and in behalf of the U.S. Department of Agriculture. The appointed official, representatives and employees acting on behalf of Defendant Perdue in their official capacities were Violet Hall, acting on behalf of the Director of Adjudication,

1

Basil Gooden, State Director of USDA-Rural Development, Anne E.E. Herring, Single Family Housing Program Director, Sharidon Daniel, Human Resources Specialist, and Patricia Del Vecchio, in her dual role as Employee Assistance Program ("EAP") Regional Coordinator and Human Resource Specialist.

2. This Complaint against Secretary of the United States Department of Agriculture Sonny Perdue, in his official capacity, pertains to violation my rights under the United States Constitution; Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 et seq.), Civil Rights Act of 1991; Civil Service Reform Act of 1978 and the Whistleblower Protection Enhancement Act of 2012.

3. This action was commenced on July 03, 2018 following the above exhaustion of administrative remedies available through the Equal Employment Opportunity Commission ("EEOC" or "Commission") complaint process. (Exhibit 3).

4. (a) The Department posted two vacancies for job announcement number MP-VA-14-4267A, Job Title: Single Family Housing Assistant/Single Family Housing Technician (Area Technician) and job announcement number DEU-VA-2014-4426, Job Title: Area Technician.

5. (a) I applied to job announcement number MP-VA-14-4267A, Job Title: Single Family Housing Assistant/Single Family Housing Technician (Area Technician) as a Disabled Veteran with a 30% compensable disability rating from the Veterans Administration. (b) I applied to job announcement number DEU-VA-2014-4426, Job Title: Area Technician as a U.S. citizen.

6. Beginning on or about April 24, 2014 the Defendant violated my Fourteenth Amendment right to make and enforce an employment agreement when Sharidon Daniel notified me of

2

my tentative selection for the GS-5 entry level Single Family Housing Technician position. (Exhibit 4) (b) On May 28, 2014 Basil Gooden confirmed my acceptance of a permanent career-conditional appointment. (Exhibit 5) (d) Matthew Underwood was appointed as an Area Technician under announcement number DEU-VA-2014-4426 on June 01, 2014. (c) Anne E. E. Herring informed me I would start on Monday, June 9, 2014 in Rural Development as a Single Family Housing Loan Technician. (Exhibit 6)

7. (a) I was a qualified individual with a disability within the meaning of the Americans with Disabilities Act. (b) I satisfied the requisite skill, experience, education and other job-related requirements of the employment position I held with or without reasonable accommodation. (c) I performed the essential functions of my position. (d) My disability status as a disabled veteran remained unchanged between June 09, 2014 and October 03, 2014 (e) Beginning on or about June 9, 2014 the Agency subjected me to disability discrimination due to my status as a disabled veteran with a mental health designation. (f) I was disabled within the meaning of the Rehabilitation Act. (g) The Agency admits I can show I was disabled within the meaning of the Rehabilitation Act. (h) Violet Hall admits I can show I was a qualified disabled person.

8. Beginning on or about June 09, 2014; (a) Basil Gooden confirmed he was aware the term "Personality Disorder" is listed on my DD214 form, (b) Basil Gooden was on notice of my need for reasonable accommodations, (c) Basil Gooden was aware of my reasonable accommodation requests, (d) Anne E. E. Herring confirmed I was hired as a disabled veteran, (e) Anne E.E. Herring was on notice of my need for reasonable accommodations, (f) Anne E. E. Herring was aware of my reasonable accommodation requests, (g) Sharidon Daniel acknowledged my application packet contained documents confirming I am a

3

disabled veteran with the term "Personality Disorder" listed on my DD214 form, (h) Sharidon Daniel was on notice of my need for reasonable accommodations, (i) Sharidon Daniel was aware of my reasonable accommodation requests, (j) Patricia Del Vecchio accessed a copy of my DD214 with the term "Personality Disorder" designation, (k) Patricia Del Vecchio was on notice of my need for a reasonable accommodation and (l) Patricia Del Vecchio was aware of my reasonable accommodation request.

9.   On or about June 11, 2014 Sharidon Daniel read my DD214 aloud in Single Family Housing in the presence of my coworkers.

10.  Beginning on or about June 11, 2014 Defendant summarily denied all of my reasonable accommodation requests on several occasions and Defendant made no attempts to; (a) engage in the interactive process to determine what my mental health disability limitations involved, (b) identify which of my essential job functions could be modified, (c) explore the possibility of other potential accommodations, or (d) accept my offer to supply medical documentation from a physician at the Veterans Hospital.

11.  Beginning on or about July 09, 2014 I participated in protecting the rights available to Anne E. E. Herring, Sharidon Daniel and Margie Wise pursuant to the Civil Rights Act of 1981.

12.  On or about July 01, 2014 Anne E.E. Herring delegated her supervisory authority to my coworkers that resulted in me being task from various employees within rural development. On or about August 01, 2014 Anne E.E. Herring informed Patricia Del Vecchio that she had little contact with me.

13.  On or about July 01, 2014 I was subjected to a hostile environment.

4

14. Beginning on or about July 01, 2014 I was subjected to harassment that was verbally offensive, humiliating and physically threatening.

15. On August 22, 2014 Anne E. E. Herring and Sharidon Daniel presented a proposed letter of adverse action to me captioned "Letter of Counseling".

16. (a) On or about August 25, 2014 I made a reasonable accommodation requested to be moved from the Single Family Housing unit. (b) On February 16, 2014 Basil Godden insisted my request to be moved from my Single Family Housing workspace was a "demand".

17. I filed an initial equal employment opportunity (EEO) complaint with the Department on August 28, 2014 (Exhibit 7).

18. (a) On or about July 10, 2014 my first line supervisor Anne E. E. Herring began to refuse my telephone calls and failed to respond to my emails. (b) On or about September 22, 2014 I became aware that I would not receive a 90-day mandatory performance evaluation.

19. On September 25, 2014 I (a) contacted the Civil Rights office and informed EEO Senior Counselor Rene Brown of being physically threatened by Single Family Housing Guaranteed Loan Specialist Brenda Johnston. (b) Basil Gooden and Anne E. E. Herring confirmed Single Family Housing Guaranteed Loan Specialist Brenda Johnston was allowed to contribute to my termination. (c) On August 25, 2014-August 28, 2014 I reported to EEO Civil Rights Counselor Renee Brown and Basil Gooden that Anne E. E. Herring harassed me over the course of several days for refusing to leave the workplace with Single Family Housing Guaranteed Loan Specialist Brenda Johnston. (d) Anne E.E. Herring reprised against me by requiring me to report directly to Brenda Johnston.

20. I received a notice of right to file a formal complaint on September 26, 2014 (Exhibit 8)

21. On August 06, 2014 at 2:34PM Anne E. E. Herring informed my coworkers to scrutinize my work product by instructing them, "...to document all performance matters and forward to me. Whatever it may be." (a) Anne E. E. Herring informed Basil Gooden and Sharidon Daniel that she was, "Crafting a termination letter for her review. Need specific training dates and cited performance issues in the last 10 days" and "Have asked Brenda and Letonya to provide."

22. (a) Beginning on or about June 09, 2014 Basil Gooden declined to exchange essential information with me that would enable me to receive reasonable accommodations. (a) Beginning on or about June 09, 2014 Anne E.E. Herring declined to exchange essential information that would enable me to receive reasonable accommodations. (c) Beginning on or about June 09, 2014 Sharidon Daniel declined to exchange essential information that would enable me to receive reasonable accommodations. (e) Beginning on or about July 01, 2014 Patricia Del Vecchio (a) declined to exchange essential information that would enable me to receive reasonable accommodations and (b) denied my access to the Employee Assistance Program.

23. Defendant ensured my future attempts to request and receive reasonable accommodations would be unsuccessful when she advised (a) Anne E.E. Herring if I tried to receive accommodations from Basil Gooden, "We can discuss with him, so that if she tries, he steers her back to you." (b) Beginning on or about July 01, 2014 was aware of my constant reasonable accommodation requests and denials. Basil Gooden admitted he told me he would talk to Ms. Herring and, "...we'll see what we need to do."

24. Beginning on or about June 27, 2014 I was subjected to unequal terms and conditions of employment that favored similarly situated non-disabled coworkers.

25. (a) On October 01, 2014 I received an Equal Employment Opportunity amended notice of right to file a formal complaint. (Exhibit 9)

26. On October 01, 2014 Basil Gooden; (a) informed me Anne E. E. Herring requested my termination, (b) presented me with a letter of termination, and (c) escorted me out of the building located at 1606 Santa Rosa Road Richmond, Virginia 23229.

27. On October 01, 2014 the letter of termination showed no evidence of; (a) grievances filed against me by employees or the public, (b) informal or official reprimands against me, (c) noncompliance with a performance improvement plan (PIP), (d) being charged or accused of performing at an unacceptable level according to the critical elements of my position description, (e) insubordination charges against me, (f) being given an interim performance evaluation, (g) a performance appraisal, (h) a rating of record on file for me, (i) being charged with being absent without official leave (AWOL), (j) accusations against me for causing Single Family Housing loan denials, (k) being charged with any acts of egregious misconduct, (l) being accused of or charged with making threats, (m) being accused of or charged with using expletives, or (n) accusation or charges against me for violations of governing laws, rules or regulations.

28. On October 03, 2014 Basil Gooden sent an after-termination offer for my consideration. Mr. Gooden's offer stated, "I am willing to agree to: Have the adverse personnel action (Letter of Counseling) given by Anne Herring removed from Shawn Gonzalez's permanent record. Allow Shawn Gonzalez to resign from her position, in lieu of termination, only in exchange for a signed contractual agreement from Mrs. Gonzalez not

to pursue any future complaints (informal or formal) against USDA-Rural Development or its personnel. Complete these personnel actions outside of the Richmond Virginia State Office, preferably at the National office."

29. On October 10, 2014 I filed a formal complaint alleging disability discrimination, retaliation and reprisal, ADA violations, prohibited personnel practices (PPP), deceptive hire, violations of Single Family Housing's (SFH) Program Civil Rights of borrower's harassment, hostile working environment, gross mismanagement and dereliction of duty. (Exhibit 10) On October 10, 2014 the Department acknowledged my formal complaint. (Exhibit 11)

30. Beginning on or about July 10, 2014 the Defendant violated my rights under the Civil Service Reform Act relating to prohibited personnel practices and whistleblower disclosures and the Veterans Employment Opportunities Act (VEOA).

31. On or about July 05, 2014 I noticed irregularities with processing housing, banking, energy, research and marketing appropriations outlined in the 2014 Farm Bill. (b) On or about July 10, 2014 I began reporting the violations to Basil Gooden. violated my disability rights and removed me from employment to continue a pattern of receiving gubernatorial appointments from transitioning Virginia Governors. (c) Basil pending appointments (d) On or about June 09, 2014 Anne E.E. Herring's family owned real estate agency located in Lexington, VA identified by SCC ID # S1904525. (e) I was subjected to reprisals as a result of objecting to Single Family Housing program violation.

## JURISDICTION AND VENUE

32. This action is brought against the United States Department of Agriculture, and its representatives, as a Defendant under the Constitution and laws of the United States of

America. This Court has jurisdiction pursuant to 28 U.S.C. § 1331; 42 U.S.C. §§ 1981, 2000e-16; 29 CFR § 1614.407(c).

33. Equitable relief is authorized by and subject to the jurisdiction of this Court under 28 U.S.C. §§ 2201, 2202; 29 U.S.C. § 794(a); 42 U.S.C. §§ 1981, 2000e-16;

34. This Court has authority to award reasonable costs and attorneys' fees pursuant to 42 U.S.C. §§ 12205,

35. Compensatory damages are authorized by and subject to the jurisdiction of this Court pursuant to 2 U.S.C. § 1311(a)(3); 29 U.S.C. § 794(a)(a)(1); 42 U.S.C. § 2000e-16;

36. Pecuniary damages are authorized by and subject to the jurisdiction of this Court pursuant to 5 U.S.C. § 2302.

37. Non-pecuniary damages are authorized by and subject to the jurisdiction of this Court pursuant to 5 U.S.C. § 2302.

38. Venue is properly in this Court under 28 U.S.C. § 1391 (b)(2) due to acts giving rise to this Complaint occurring at my former location of employment at 1606 Santa Rosa Road Richmond, Virginia 23229.

### STATEMENT OF CLAIMS

39. Paragraphs 1-38 are incorporated herein.

40. **Fourteenth Amendment claim**: Beginning on or about April 24, 2014 the Defendant prevented me from the enforcement of my Fourteenth Amendment rights when I was; (a) denied protection from the laws that enforce disabled veteran rights, (b) appointed under a career-conditional appointment and obstructing from enforcing the laws and protections that govern career-conditional appointments, Enforce the employment contract I was offered and accepted as a Single Family Housing (Area Technician) under job

9

announcement number. (c) Make or decline a temporary/trial employment contract, (d) Forced to perform work without equal pay and compensation, (e) objecting to being forced to perform work under unlawful policies, practices and circumstances, (f) required to accept the violation of my Fourteenth Amendments rights as a condition of continued employment, (g) subjected to a verbally and physically harassing and hostile working environment, (h) prevented from receiving enforcement of the laws, rules and regulations that prohibit harassment and hostile treatment in the workplace, and (i) removed due to a pretext termination designed to hide violations of the law.

41. **Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 et seq.) claim**: Beginning on or about April 24, 2014 Defendant discriminated against me on the basis of my mental health disability when; (a) I was judged as being too dangerous to complete the hiring process, (b) advancement (c) termination, (d) employee compensation, (e) job training, (f) other terms, (g) devised strategies to incite harassment and hostile conduct that would be instigate dangerous behavior. (h) subjected to reprisals for requesting the enforcement of my rights, and (i) retaliated against for seeking oversight of the decisions that denied enforcement of the laws that protect my rights, terms, conditions, and privileges of employment. (j) received injury to my professional standing, (k) Treated me differently from similarly situated non-disabled employees. (l) After my termination State Director Basil Gooden presented a legally binding offer designed to forfeit my rights, (m) access to reasonable accommodations were willfully impeded due to the agency refusing to exchange essential information and delaying and obstructing the interactive process when there were plausible reasons to believe that my disability could be accommodated.

42. **Civil Rights Act Section 717 of the Civil Rights Act claim:** (a) Defendant discriminated against me for (a) opposing practices based on race made unlawful by Title VII pursuant to the Civil Rights Act of 1964, and (b) retaliated against me for objectively participating against discriminatory animus based on race made unlawful by Title VII of the Civil Rights Act of 1991 when I attempted to enforce my rights under disability discrimination laws.

43. **Civil Service Reform Act of 1978 Claim:** I allege that on/about April 24, 2014 and April 05, 2018 the Agency violated the Civil Reform Act of 1978 when; (a) Prohibited Personnel Practices (5 U.S.C. § 2302) were knowingly violated regarding my veterans' preference right to compete when; Basil Gooden influenced me to withdraw from competition to improve the employment prospects of others, and then used unauthorized preference to improve the prospects of others while injuring my prospects for employment. (b) Removed me to improve his chances of receiving partisan political appointments. Basil Gooden and Anne E. E. Herring interfered with my ability to compete for jobs that only would have been available to status employees and job opportunities that were not offered to other external candidates.

44. **Whistleblower Protection Enhancement Act of 2012 Claim:** I allege that beginning on or about July 05, 2014 about I made a disclosure to Basil Gooden regarding evidence of activities in Single Family Housing that violated the Title VIII of the Civil Rights Act of 1968 when staff; (a) made housing unavailable to Virginia citizens with specific familial status, (b) set different terms, conditions and privileges for the sale of affordable housing, (c) provided different housing services to potential borrowers within a specific socioeconomic group that impacted mortgage lending qualifications, and (d) Basil Gooden

11

interfered with me making fair housing complaints by telling me he would take care of it, however, (e) Single Family Housing staff were required to continue the violations per Anne E.E. Herring.

45. **Whistleblower Protection Enhancement Act of 2012 Retaliation Claim:** I allege that beginning on or about July 14, 2014 the Defendant retaliated against me for making the Title VIII of the Civil Rights Act of 1968 complaints when the files I complained about and Brenda Johnston physically threatening behavior were cited in my October 01, 2014 letter of termination.

Regarding the respective Counts, I allege the following:

## COUNT I.
### Violation of the Fourteenth Amendment

46. Paragraphs 1-45 are incorporated herein.

47. On or about April 24, 2014 Defendant violated my Fourteenth Amendment right to enforce my career conditional employment contract when; (a) Human Resource Specialist Sharidon Daniel failed to notify me of an offer for a temporary/trial appointment, (b) present notification identifying my selection for the Area Technician position posted under announcement number DEU-VA-2014-4426. (c) Basil Gooden failed to notify me that my acceptance of a permanent career-conditional appointment was converted to a temporary/trial appointment. (d) On or about June 10, 2014 Defendant violated my Fourteenth Amendment right to enforce my career conditional employment contract when; (a) After my termination Basil Gooden presented a legally binding offer to me that involved violated my rights under the Americans with Disabilities Act.

48. Defendant improperly rescinded my career-conditional offer of employment.

12

49. On or about June 10, 2014 Defendant violated my Fourteenth Amendment right to make a trial/temporary employment agreement when; (a) Sharidon Daniel failed to (a) notify me of a temporary/trial appointment job offer, and (b) failed to show proof of my acceptance of a temporary/trial appointment.

### COUNT III.
### Fourteenth Amendment Protections Against Workplace Harassment

50. Paragraphs 1-49 are incorporated herein.

51. Beginning June 09, 2014 Harassment Opposed Letonya Mann constant claims of racism without the me having witnessed any acts of racism.  Beginning on or about June 11, 2014 I reported to Basil Gooden my coworker GS-7 Single Family Housing Loan Technician Cheryl Bates approached me on several occasions in my workstation to inform me she objected to me being (a) hired with my veteran disability status and (b) assigned to work with her in Single Family Housing. (c) I informed Basil Gooden I believed Ms. Bates' comments were offensive. I requested a reasonable accommodation that involved Mr. Gooden verbally discouraging Ms. Bates. (f) The anti-military sentiment continued from Ms. Bates and eventually worsened. (g) Basil Gooden was aware Single Family Housing Loan Technician Cheryl Bates contributed to the inappropriate conduct portion of my letter of termination. (g) Basil Gooden and Anne E. E. Herring approved Cheryl Bates' promotion.

52. August 18, 2014 GS-12 Management Control Officer Margo Epps, Brenda Johnston and Letonya Mann in the same place and time, standing directly behind me while I was seated in my cubicle. All three individuals were speaking over each other at the same time attempting to engage me in three different conversations while Loan Technician Cheryl Bates begin to repeat loudly over the cubicles, "I want her out of here!" I reported the

incident to Basil Gooden. (b) On August 18, 2014 I attempted to leave my cubicle to inform Basil Gooden about the three employees when Letonya Mann followed closely behind me. I felt intimidated as Ms. Mann continued to call my name to stop me from speaking with Mr. Gooden. (c) On August 18, 2014 when I reached Mr. Gooden's office Ms. Mann was still closely behind me as I explained to him what transpired at my cubicle.

53. (a) On August 18, 2014, in the middle of my explanation Ms. Mann yelled out something to the effect of, "I'm tired of these fucking racist people around here!" (b) Mr. Gooden witnessed first-hand GS 6 Single Family Housing Loan Technician Letonya Mann's outburst. (c) Ms. Mann was not disciplined. (d) Ms. Mann was promoted and received a prestigious work location within the Secretary of Agriculture's office. (e) Basil Gooden was aware Single Family Housing Loan Technician Letonya Mann and was asked to contribute to my October 01, 2014 termination letter. (f) Basil Gooden allowed Ms. Mann to contribute to my letter of termination.

54. On or about August 25, 2014 I reported to Basil Gooden that I was receiving harassing emails from Anne E. E. Herring for refusing to leave the workplace with Single Family Housing Loan Technician Cheryl Bates during the workday. (b) On August 25, 2014-August 28, 2014 Basil Gooden involving Single Family Housing Program Manager (c) Anne E. E. Herring harassing me about my choice to stay in the office and work through backlogged housing applications instead of attending my coworker Matthew Underwood's birthday party offsite on August 25, 2014.(d) The harassment from Anne intensified after I informed Mr. Gooden and developed into Ms. Herring ordering me to directly report to my Single Family Housing coworkers as a group instead of her. it appeared he has done nothing (e) due to the harassment continuing with Anne harassing me about reporting to

my coworker Brenda. and (f) informed him I was forced to involve others outside of my chain of command. (g) Basil told me if I informed anyone outside of my chain of command, he would act as well. (h) (i) On February 16, 2014 State Director Basil Godden admitted he considered my "request" to be moved a "demand" to be moved.

**COUNT IV.**
**Reprisals for Efforts to Enforce Fourteenth Amendment Protections Against**
**Workplace Harassment**

55. Paragraphs 1-54 are incorporated herein.

56. The Department systemically failed to properly process my employment, complaints or reasonable accommodation request and denials when; (a) On December 23, 2014 the Department provided me with a Partial Acceptance and Amendment Letter. (Exhibit 12) (b) The Agency fragmented my complaint to exclude my anti-military sentiment allegations and after my objections the agency improperly refused to reintegrate my Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) claims. (Exhibit 13) (c) The Agency issued its Final Agency Decision (FAD) of RD-2014-00830 on June 30, 2015 in favor of the Agency. (c) On August 07, 2015 I filed an appeal of the FAD with the Equal Employment Opportunity Commission ("EEOC" or "Commission") by and through its representatives the Office of Field Operations ("OFO"). (d) The Appellant Decision (AD) #0120152701 was decided in favor of the Agency on November 28, 2017. (e)  I appealed the AD by filing a request for reconsideration (RFR) #05201180166 on December 27, 2017. On April 02, 2015 the Department extended its investigation timeframe without obtaining my written consent. (Exhibit 14) On September 17, 2015 the OFO acknowledged receipt of my appeal of the Final Agency Decision. (Exhibit 15) On July 19, 2016 USDA-RD notified the OFO it

omitted my formal complaint from the Record of Investigation (ROI) (Exhibit 16) that contained my October 10, 2014 formal complaint claims of disability discrimination. My official position description remained blank. (Exhibit 17). The Form AD435-performance plan, progress review and appraisal worksheet show I exceeded performance in position critical elements. (Exhibit 18)

### COUNT V.
### Fourteenth Amendment Protections Against Wrongful Termination

57. Paragraphs 1-56 are incorporated herein.

58. (a) On or about June 27, 2014 Sharidon Daniel conflated my attempts to protect my constitutional and disability rights as acts of insubordination, rude behavior, unprofessionalism and inappropriate conduct. (b) On or about June 27, 2014 Anne E.E. Herring began crafting my termination by conflating software failures with failure to follow instructions to justify unacceptable performance.

59. (a) On or about June 18, 2014 at 6:08PM Anne E. E. Herring asked Sharidon Daniel if she could terminate my employment. (b) On June 18, 6:34PM Sharidon Daniel replied to Ms. Herring stating, "just keep documentation We do not have enough but we can get rid of her for failure to follow instructions". (c) On or about June 27, 2014 Sharidon Daniel claimed I "threw a legal pad at her". (d) Basil Gooden admitted I informed him Ms. Daniel falsely accused me of throwing a legal pad at her. (e) On or about June 27, 2014 Anne E.E. Herring sought the assistance of Sharidon Daniel on how to begin my termination. (f) Between approximately June 11, 2014 and July 23, 2014 Anne E.E. Herring informed Sharidon Daniel she considered me "too dangerous". (g) On February 20, 2015 Sharidon Daniel confirmed she said I threw a legal pad at her and admitted I "never" threw a legal pad at her.

60. Beginning on or about July 01, 2014 I was required to perform duties outside of my GS-5 data entry position description that included; (a) mortgage lien releases, (b) human resource mail room duties, (c) software diagnostics, (d) software repair, (e) system overrides, and (f) system authorizations.

61. (a) On August 25, 2014 at 8:58AM Basil Gooden and Anne E. E. Herring were notified the Virginia SharePoint migration failed to migrate correctly. (b) Basil Gooden and Anne E. E. Herring were informed the Virginia SharePoint tracking lists were read-only. (c) Basil Gooden and Anne E. E. Herring were advised 227 files from the Virginia SharePoint tracking lists were lost as a result of the failed SharePoint migration. (d) Basil Gooden and Single Family Housing Program Director Anne E. E. Herring were notified the Virginia SharePoint tracking a difference of 1091 SharePoint files.

62. Beginning on or about July 01, 2014 Defendant created pretext when; removable offenses were not verified to differentiate between human error and software malfunctions, (b) SharePoint processing functions failures, (f) ADOBE software updates, (g) AgLearn course completions and authorizations, and (h) system authorizations or a lack thereof.

63. Beginning on or about July 01, 2014 the Basil Gooden, Anne E. E. Herring and Sharidon Daniel injured my professional standing as a result of discriminatory conduct to perform duties outside of my GS-5 data entry position description that included; (a) mortgage lien releases, (b) human resource mail room duties, (c) software diagnostics (SharePoint), (d) software updates and repair, (e) system overrides (SharePoint, HR empower), (f) software authorization bypass. (SharePoint, AgLearn).

64. Beginning on or about June 11, 2014 and on or about June 27, 2014 Defendant improperly rescinded my offer of employment when; (a) Anne E. E. Herring sought guidance for my

17

removal within two weeks after my appointment. (b) Refused to properly and equally evaluate my GS-5 level data entry performance, (c) Sharidon Daniel discontinued the new hire processing required for my career conditional appointment, and (d) withheld access permissions to enter data as a new employee.

65. (a) Beginning on or about June 27, 2014 I reported that administrative assistant Margie Wise began to mock my mental health disability in Single Family Housing in the presence of my coworkers and the behavior was humiliating. (b) On or about July 21, 2014 Margie Wise was in Single Family Housing bragging about being told I believed she was mocking me and being required to take over her administrative mail rood duties. (c) On or about July 22, I was retaliated against for telling Margie Wise to do her own work.

### COUNT VI.
**Reprisals for Efforts to Enforce Fourteenth Amendment Protections Against Wrongful Termination**

66. Paragraphs 1-65 are incorporated herein.

67. Subjected me to reprisals for exercising my right to enforce my career-conditional employment contract related to performance when; On October 01, 2014 I was served with a letter of termination that cited my attempts to receive reasonable accommodations crafted as failure to follow instructions.

68. Subjected me to reprisals for exercising my right to enforce my career-conditional employment contract related to conduct when; On October 01, 2014 I was served with a letter of termination that cited my attempts to receive reasonable accommodations crafted as unacceptable conduct.

### COUNT VII.
**Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 et seq.)**

69. Paragraphs 1-68 are incorporated herein.

18

70. Beginning on/about June 9, 2014 the Defendant violated my rights pursuant to the Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 et seq.) when; (a) my first and second line supervisors and human resources denied my reasonable accommodation requests that would aid my continued employment, (b) Created barriers to prevent me from receiving my reasonable accommodations requests, (c) my first and second line supervisors and human resources subjected me to disability discrimination due to my status as a Disabled Veteran. (b) On or about June 27, 2014 Defendant regarded me as "too dangerous" to continue employment due to my record of disability. Began discussing and improperly processing my removal prior to completing my new hire processing.

71. On or about April 24, 2014 and April 05, 2018 discriminated against me based on disability regarding the hiring, advancement, termination, compensation, job training, employment, terms and conditions of my employment and the privileges of employment.

## COUNT VIII.
### Violation of Section 501 of the Rehabilitation Act

72. Paragraphs 1-71 are incorporated herein.

73. My requests for change of work schedule reasonable accommodation were summarily denied by the agency before and after I voluntarily offered to provide medical documentation when: Human Resource Specialist Sharidon Daniel confirmed, "Dr. Gooden had told me that Shawn informed him that she would like to change her work schedule to accommodate appointments for therapy."

74. In her affidavit, when asked about my request for a work schedule adjustment Anne Herring stated, "I believe she wanted to go to some medical appointments.

75. (a) Basil Gooden, Anne E. E. Herring and Sharidon Daniel made no attempt to determine what my limitations were or which of my essential job functions could be modified. (b)

Basil Gooden, Anne E. E. Herring and Sharidon Daniel made no attempt to explore the possibility of other potential accommodations. (c) To prevent me from receiving reasonable accommodations Anne E.E. Herring stated I must use a particularized form that she was not going to provide to me.

## COUNT IX.
### Violation of Section 508 of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 et seq.)

76. Paragraphs 1-75 are incorporated herein.

77. (a) Human Resource Specialist Sharidon Daniel instructed Single Family Housing Program Director Anne E. E. Herring to deny my access to electronic and information technology required to grant my reasonable accommodation request. (b) Single Family Housing Program Director Anne E. E. Herring obstructed my access to the electronic and information technology necessary to obtain my reasonable accommodation request.

78. (a) Beginning on or about July 2014 until approximately August 11, 2014 my reasonable accommodation requests to telework were summarily denied by my first line supervisor Single Family Housing Program Director Anne E.E. Herring when; (b) Ms. Herring explained she was denying my request because I did not have mobile equipment. (c) Ms. Herring informed me she was also denying my request because of my probationary status (d) Ms. Herring was not required to show an undue hardship related to denying my request.

## COUNT X.
### Reprisal in Violation of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 et seq.)

79. Paragraphs 1-78 are incorporated herein.

80. Beginning on or about July 01, 2014 I was reprised against by Single Family Housing Program Director Anne E.E. Herring for requesting the reasonable accommodation of telework when; (a) On August 01, 2014 at 1:37PM Single Family Housing Program Director Anne E. E. Herring sent an email to Human Resource Specialist Sharidon Daniel stating, "...I mentioned before that would be very difficult for a tech plus without a laptop. Byron asked if someone could take Brenda M's sub office tech duties, shall I assign them to her and see what happens? I suspect major issues. Don't really want to but may be a good idea to try." (c) On August 01, 2014 at 1:44PM Single Family Housing Program Director Anne E. E. Herring sent another email to Human Resource Specialist Sharidon Daniel asking, "...do I respond on the T/W now? She hasn't even been given a cert, or do we say that?" Human Resource Specialist Sharidon Daniel responds, "I would not even mention that" and "the answer is not going to change".  (d) In an email on August 01, 2014 at 2:36PM Single Family Housing Program Director Anne E. E. Herring informed Human Resource Specialist Sharidon Daniel, "This is another reason I wanted to throw sub office stuff to her, since has to be in the office." (e) On August 01, 2014 at 5:43PM Single Family Housing Program Director Anne E. E. Herring sent a follow-up email to Human Resource Specialist Sharidon Daniel stating, "...we can hammer performance now."

81. I was reprised against by Single Family Housing Program Director Anne E.E. Herring for requesting the reasonable accommodation of office relocation when; State Director Basil Gooden clarified he did not move me to accommodate "some disorder".

82. There were plausible reasons to believe that my reasonable accommodation requests of staff correction, telework, work schedule adjustment and an office relocation could have

21

been accommodated without an undue hardship when; On or about June 09, 2014 and October 01, 2014 (a) The administrative mail room duties of Margie Wise were not a part of my essential job description and the duties could have been reassigned to an employee within Ms. Wises' unit. (b) The nature of my intake data entry duties was being accomplished remotely by non-disabled employees. (c) The Agency made the decision that new employees could have an alternative work schedule. (d) Anne E.E. Herring admitted after discussion with Sharidon Daniel, the Agency needed me to clear the Single Family Housing application backlog, and Basil Gooden approved and changed my work hours to include a Saturday and overnight work hours on a Sunday. (e) On or about July 23, 2014 Basil Gooden was actively encouraging telework. (f) Reassignment to several vacant positions were available.

83. (a) State Director (RMO2/S2) Basil Gooden claimed he was the approval official for reasonable accommodations. (b) Single Family Housing Program Director/Manager (RMO1/S1) Anne E. E. Herring commented, "He is not the approval official for such matters. Those are up to your supervisor for approval." (c) Anne E. E. Herring stated requests, "...must be formally submitted on the correct form with complete information before consideration can be given." (e) Anne Herring responded to my emailed request to telework. Ms. Herring stated, "At such time that you are not in training, (f) in probation and (g) have mobile equipment, we can certainly discuss".

84. My reasonable accommodation requests were continually delayed through the dismissive of my reasonable accommodation requests and disability discrimination complaints when; (a) Basil Gooden admitted he considered the my EEO complaints as, "blah, blah, blah". (b) Basil Gooden admitted when the Plaintiff spoke to him about her EEO issues he

responded, "Tell me about them. Help me understand." (c) Anne E. E. Herring stated,

"there is no rush."

## COUNT XI.
### Retaliation in Violation of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 et seq.)

85. Paragraphs 1-84 are incorporated herein.

## COUNT XII.
### Intentional Violation of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 et seq.)

86. Paragraphs 1-85 are incorporated herein.

87. I allege that on/about April 24, 2014 and April 05, 2018 denied my ability to receive an alternative work location (telework) by assigning administrative division mail room duties and sub office duties that required me to work outside of my position description and have immediate access to mortgage documents located in the workplace.

## COUNT XIII.
### Violation of Section 717 of the Civil Rights Act (42 U.S.C. § 1981a)

88. Paragraphs 1-87 are incorporated herein.

## COUNT XIV.
### Participation Clause of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII)

89. Paragraphs 1-88 are incorporated herein.

90. Beginning on or about July 2014 Defendant violated my right per the Civil Rights Act of 1981 to advocate for others to receive the protecting when; (a) I informed Basil Gooden on multiple occasions I did not believe Anne E.E. Herring and Sharidon Daniel and Margie Wise were discriminating against me because of my race. (b) I did not believe it was racist when Shardion Daniel read my DD214 aloud in the presence of my coworkers. (c) I did not believe it was an act of racial discrimination when Shardion Daniel falsely

report that I threw a legal pad at her. (d) I did not believe it was racist when Anne E. E. Herring denied all of my reasonable accommodation requests. (e) In all instances I informed Basil Gooden the above actions occurred due to disability discrimination.

91. Beginning on or about July 22, 2014 (a) Basil Gooden and Letonya Mann pressured me to accuse Anne E. E. Herring, Sharidon Daniel and Margie Wise of racial discrimination instead of disability discrimination. (b) I vehemently opposed falsely accusing Anne E. E. Herring, Sharidon Daniel and Margie Wise of racial discrimination. (c) I explained to Basil Gooden that he was suggesting reverse racism. (d) Basil Gooden refused to speak with me shortly after my disagreement with him about racial discrimination.

## COUNT XV.
## Opposition Clause of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII) Retaliation

92. Paragraphs 1-91 are incorporate herein.

93. Defendant retaliated against my rights per the Opposition Clause of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII) when Basil Gooden refused to perform his managerial duty as State Director to; (a) dissuade Anne Herring from her failure to engage in the interactive process were prohibited by law and agency policies and procedures, (b) prevent Anne Herring from future refusals to grant my reasonable accommodation request were prohibited by law and agency policies and procedures, (c) advise Anne Herring that her refusal to grant reasonable accommodation request were prohibited by law and agency policies and procedures, (d) Basil refused to perform his managerial duty to require Anne Herring to present evidence of an undue hardship that supported her refusal of my reasonable accommodation requests to telework, (e) require Anne Herring to present evidence of an undue hardship that supported her

refusal of my reasonable accommodation requests to change my work schedule to accommodate therapy appointments at the Veterans Hospital. (f) prohibited Letonya Mann's contribution to my letter of termination due to his first-hand knowledge of Ms. Mann's August 18, 2014 statement to the effect of, "I'm tired of these fucking racist people around here!" (g) Basil refused to perform his managerial duty to require Anne Herring to present evidence of an undue hardship that supported her refusal of my reasonable accommodation requests to telework.

### COUNT XVI.
### Civil Service Reform Act of 1978

94. Paragraphs 1-93 are incorporated herein.

95. On/about April 24, 2014 and April 05, 2018 violated the Civil Service Reform Act of 1978 Prohibited Personnel Practices (5 U.S.C. § 2302) provisions when; Basil Gooden was (a) appointed as State Director of Rural Development on May 05, 2014 (b) awaiting a board appointment on Governor Terence R. McAuliffe's the Commonwealth Council on Bridging the Nutritional Divide (c) was aware of Governor Terry McAuliffe Nutrition of Farm Bill 2014 (b) housing (c) banking (d) energy (c) awaiting pending nomination for Secretary of Agriculture and Forestry for the Commonwealth of Virginia (d) awaiting the pending confirmation in the position of Secretary of Agriculture and Forestry for the Commonwealth of Virginia from Virginia Senator Mark Warner and Virginia Senator Tim Kaine. (e) On June 09, 2014 Anne E. E. Herring introduced me to Basil Gooden. (f) On or about June 09, 2014 Basil Gooden informed staff of his pending appointment as Secretary of Agriculture and Forestry for the Commonwealth of Virginia. (g) Basil Gooden knowingly violated my veterans' preference rights with internal vacancies. (h) On October 03, 2014 Basil Gooden attempted to implement a nondisclosure agreement that did not

contain the following statement: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection.

## COUNT XVII.

### Whistleblower Claim

96. Paragraphs 1-95 are incorporated herein.

97. **Whistleblower Retaliation Claims:** I allege that beginning on/about April 24, 2014 the Defendant failed to take a personnel actions related to  an appointment,  promotion,  a detail, transfer, or reassignment, a decision concerning pay, benefits, or awards, or concerning training reasonably expected to lead to an appointment, performance evaluation, or other action described in this subparagraph; and any other significant change in duties, responsibilities, or working conditions that would entitle me to remain employed.

For the foregoing reasons, I move the Court to grant a *de novo* review of my claims against the Defendant and order this complaint to move forward to discovery.

## COUNT XVIII.
### Whistleblower Retaliation

98. Paragraphs 1-97 are incorporated herein.

## XI. PRAYER FOR RELIEF

I move the Court to grant relief for the Counts against the Defendant for violating my rights under the United States Constitution, Rehabilitation Act, Civil Rights Act; Civil Service Reform Act, and the Virginia Human Rights Act according to the following;

99. Paragraphs 1-98 are incorporated herein.

100. The completion of the hiring process to include the restoration of unused sick leave, conversion of unused sick leave to my retirement account, restoration of unused annual leave conversion of unused annual leave to my retirement account.

101. Rescission of wrongful termination as an equitable remedy to include; (a) canceling the October 01, 2014 termination, (b) removing all negative references to the termination in my official and unofficial records.

102. Reinstate my employment with USDA-Rural Development.

103. Removal of adverse materials related to the August 22, 2014 Letter of Counseling.

104. Back pay as a result of the wrongful termination.

105. Witness fees for trial purposes.

106. Reimbursement of the bill of cost for court expenditures.

107. Reformation as an equitable remedy to reflect the original intent of the Agency to hire me as an honorably discharged Disabled Veteran with a 30% compensable disability rating from the Veterans Administration.

108. Reasonable attorney's fees.

109. Court costs, that include the reimbursement of process service fees, registered mail fees, printing costs.

110. Retirement account payment from lost wages.

111. Grant income tax offset payment.

112. Grant interest on lump sum payments.

113. $300,000.00 for findings of intentionally violating disability discrimination law.

114. Reinstatement of seniority beginning with my original date of hire, June 09, 2014.

115. I move the Court to order the provision of a laptop and mobile cell phone for telework and or alternative work location reasonable accommodation.

116. A trial by jury is requested.

117. I move the court to reframe from informing the jury of the limitations of monetary awards.

118. To resolve my claim of 717 of the Civil Rights Act of 1964 opposition violations for racial discrimination against Anne E. E. Herring, Sharidon Daniel and Margie Wise, I move the Court to order an award in the amount of $300,000.00.

119. To resolve my claim of 717 of the Civil Rights Act of 1964 participation violations in protecting Anne E. E. Herring, Sharidon Daniel and Margie Wise rights not to be falsely accused of racial discrimination I move the Court to order an award in the amount of $300,000.00.

120. GS 5 Single Family Housing back pay with interest.

121. I move the Court to order the award an amount equal to backpay as liquidated damages for findings of willful violations.

122. As a preference eligible, for violations of VEOA and prohibited personnel practices involving loss of benefit of applying and being considered for the GS-13 Administrative Officer Job Announcement Number: VA-2014-4903, GS-13 Assistant to the State Director Job Announcement Number: DEU-VA-2015-0353 and the GS-12 Community

Development Specialist Job Announcement Number: NEVA-15-0594 I move the Court to order a reconstruction of the application and hiring process.

123. I move the Court to order and award of other and further relief as this Court deems just and proper.

Dated: February 14, 2019

Respectfully submitted,

By:  /s/ Shawn V. Gonzalez
      Plaintiff
      16127 Daybreak Lane
      Beaverdam, Virginia 23015
      (804) 971-1744

Shawn V. Gonzalez, Plaintiff
16127 Daybreak Lane
Beaverdam, VA 23015
(804) 971-1744

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing **SECOND AMENDED COMPLAINT IN CIVIL ACTION No. 3:18cv459** has been sent by USPS and postmarked on the 14th day of February 2019, to the following:

Court Clerk for the Eastern District of Virginia:

                                                                Court Clerk's Office
                                                                 Richmond Division
                                                                  701 East Broad Street
                                                                 Richmond, Virginia 23219

Attorney for the Defendant:

                                                                 Jonathan Hambrick
                                                                 Suntrust Building
                                                                 919 East Main Street
                                                                 Suite 1900
                                                                 Richmond, VA 23219

Enclosures

Exhibit 1: February 14, 2019 Second Amended Complaint in Civil Action No. 3:18cv459.

Exhibit 2: February 14, 2019 LOCAL RULE 83.1(M) CERTIFICATION.

Exhibit 3: April 05, 2018 Request for Reconsideration Decision.

Exhibit 4: April 24, 2014 Tentative Selection Letter for Single Family Housing Technician.

Exhibit 5: May 28, 2014 Confirmation of Acceptance from State Director Basil Ivanhoe Gooden.

Exhibit 6: Welcome Aboard Letter from Anne E.E. Herring.

Exhibit 7: August 28, 2014 Acknowledgement Receipt of Informal EEO Complaint.

Exhibit 8: September 26, 2014 Notice of Right to File a Formal Complaint.

Exhibit 9: October 01, 2014 Right to File Formal Complaint.

Exhibit 10: October 10, 2014 Formal Complaint of Employment Discrimination.

Exhibit 11: October 10, 2014 Acknowledgement Letter.

Exhibit 12: December 23, 2014 USDA Partial Acceptance and Amendment Letter.

Exhibit 13: March 13, 2015 USDA Complaint No.: RD-2014-00830 Acknowledgment Letter.

Exhibit 14: April 02, 2015 USDA Notification of Extended Investigation Timeframe.

Exhibit 15: September 17, 2015 Office of Field Operations Acknowledgement Letter.

Exhibit 16: July 19, 2016 USDA Response to September 17, 2018 Request for Records.

Exhibit 17: Blank Official Position Description.

Exhibit 18: Form AD435-Performance Plan, Progress Review and Appraisal Worksheet.

Dated: February 14, 2019

Respectfully Submitted,

By:        /s/  Shawn V. Gonzalez
          Shawn V. Gonzalez, Plaintiff
          16127 Daybreak Lane
          Beaverdam, Virginia 23015
          (804) 971-1744

