# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**SHAWN V. GONZALEZ,**

       **Plaintiff,**

**v.**
                                 **Civil Action No. 3:18cv459**

**SONNY PERDUE,**
*Secretary, Department of Agriculture,*

       **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on four motions:

(1)     *Pro Se* Plaintiff Shawn V. Gonzalez's Rule 60 Motion for Relief From the Court's February 15, 2019 Memorandum Order (the "Rule 60 Motion"), (ECF No. 19);

(2)     Gonzalez's Rule 60(a)(b)(1) Motion to Correct a Clerical Mistake in the Court's March 8, 2019 Memorandum Order (the "Rule 60(a)(b)(1) Motion"), (ECF No. 21);

(3)     Gonzalez's Rule 59(e) Motion to Amend the Court's March 8, 2019 Memorandum Order (the "Rule 59(e) Motion"), (ECF No. 22); and,

(4)     Defendant Sonny Perdue's Motion to Dismiss in Part Gonzalez's Second Amended Complaint (the "Partial Motion to Dismiss"), (ECF No. 33).

Perdue[1] responded to Gonzalez's Rule 60 Motion, Rule 60(a)(b)(1) Motion, and Rule 59(e) Motion, (ECF Nos. 23, 24, 25), and Gonzalez replied, (ECF Nos. 26, 27, 28). Gonzalez responded to Perdue' Partial Motion to Dismiss, (ECF No. 36), and Perdue replied, (ECF No. 37). Gonzalez submitted an unauthorized sur-reply to Perdue's Partial Motion to Dismiss, (ECF No. 38).

---

[1] Perdue is represented in his official capacity as Secretary of the Department of Agriculture by the United States Attorney's Office for the Eastern District of Virginia.

These matters are ripe for adjudication. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331(a).[2] For the reasons stated below, the Court will grant the Partial Motion to Dismiss and deny the Rule 60 Motion, the Rule 60(a)(b)(1) Motion, and the Rule 59(e) Motion.

## I. Factual and Procedural History

### A. Factual Background[3]

In her Second Amended Complaint ("SAC"), Gonzalez brings this eighteen (18) count action against Sonny Perdue, in his official capacity, alleging disability discrimination during her time as an employee of the United States Department of Agriculture ("DAG") between June 9, 2014, to October 1, 2014.

---

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). The Complaint alleges that Perdue violated the Fourteenth Amendment and a number of federal statutes, including: Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e to 2000e-17; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*; the Civil Service Reform Act of 1978; and, various whistleblower statutes.

[3] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).
Rule 12(b)(1) allows dismissal for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Under 12(b)(1), when a defendant asserts that the complaint fails to state a claim upon which subject matter jurisdiction can lie, a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminal*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). However, when considering arguments under Rule 12(b)(1) which challenge the existence of subject matter apart from the pleadings, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

On June 9, 2014, DAG began to employ Gonzalez as a "Single Family Housing Technician" in Rural Development. (SAC ¶ 6, ECF No. 16.) Gonzalez alleges that she "was a qualified individual with a disability within the meaning of the Americans with Disabilities Act" and that she was "a disabled veteran with a mental health designation . . . within the meaning of the Rehabilitation Act." (*Id.* ¶ 7.)

The Court offers a brief description of the factual basis for Gonzalez's claims. Gonzalez alleges three types of discrimination. First, Gonzalez posits that other DAG employees discriminated against her on the basis of her disability. Gonzalez alleges a thirty (30) percent veteran's disability based on her mental health and personality disorder. (SAC ¶¶ 5, 8.) Specifically, she contends that "Defendant summarily denied all my reasonable accommodation requests" and made no attempts to otherwise "engage in the interactive process to determine what [her] mental health disability limitations involved." (SAC ¶ 10.) As to this claim, Gonzalez adds that other employees subjected her to a hostile work environment.[4] She states that a coworker, Brenda Johnston, physically threatened her. (*Id.* ¶ 19.) Another coworker, Anne E.E. Herring, harassed her for "refusing to leave the workplace" with Johnston. (*Id.*) Gonzalez claims that yet another employee, Cheryl Bates, approached Gonzalez to inform her that the employee "objected to [Gonzalez] being . . . hired with . . . veteran disability status." (*Id.* ¶ 51.)

Second, Gonzalez asserts that she experienced racial discrimination when two of her supervisors "pressured [her] to accuse" various coworkers "of racial discrimination instead of disability discrimination." (SAC ¶ 91.) Gonzalez states that she "vehemently opposed" attempts to coerce her to accuse coworkers of racial discrimination. (*Id.*) After that, one of her

---

[4] Gonzalez makes no allegations that her coworkers subjected her to a hostile work environment on the basis of sex.

supervisors "refused to speak to [Gonzalez] after [her] disagreement with him about racial discrimination." (*Id.*)

Third, Gonzalez complains that DAG employees retaliated against her for certain whistleblowing activities. She states that "on or about July 05, 2014," she noticed "irregularities with processing housing, banking, energy, research, and marketing appropriations outlined in the 2014 Farm Bill." (SAC ¶ 31.) Gonzalez reported those violations to a supervisor who then supposedly "violated [her] disability rights and removed [her] from employment" in order to protect himself. (*Id.*) Gonzalez also alleges that she was "subjected to reprisals as a result of objecting to . . . [a] program violation." (*Id.*)

### 1. EEOC Activity

According to unmarked documents attached to the Second Amended Complaint, Gonzalez filed a complaint with DAG on October 10, 2014. (*See* SAC Ex. 1, Complaint of Employment Discrimination). Gonzalez's initial complaint with the DAG indicates that she brought her claims for "disability discrimination, harassment, retaliation and reprisal." *Id.* Based on a letter DAG officials sent Gonzalez on December 23, 2014, Gonzalez amended that complaint on November 10, 2014. (*See* SAC Ex. 10, December 23, 2014 Letter to Gonzalez.) The amendments, memorialized in the December 23, 2014 letter, did not specify any additional forms of discrimination, instead describing additional events which supported her initial claims. (*See id.*) On March 13, 2015, DAG sent Gonzalez an additional letter, this time indicating that her complaint had been dismissed. (*See* SAC Ex. 13, March 13, 2015 Letter to Gonzalez.)

On September 17, 2015, the United States Equal Employment Opportunity Commission ("EEOC") sent Gonzalez a letter, acknowledging receipt of an appeal from DAG's dismissal that Gonzalez filed on August 7, 2015. (*See* SAC Ex. 15, September 17, 2015 Letter to Gonzalez.)

The documents submitted to the Court do not contain any information indicating that the EEOC appeal contained any different claims than those raised in her DAG complaint. Finally, on April 5, 2018, the EEOC sent Gonzalez a letter denying her request for reconsideration of her appeal on "the bases of physical and mental disabilities and reprisal." (*See* SAC Ex. 3, April 5, 2018 Letter to Gonzalez.)[5] This lawsuit followed.

## 2. Amended Complaint at Bar

The Second Amended Complaint brings eighteen counts. In the Partial Motion to Dismiss, Perdue seeks dismissal of Counts 1–6, 9, 11, and 13–18.[6]

| | |
|---|---|
| **Count 1**: | Fourteenth Amendment violation; |
| **Count 2**: | (The Second Amended Complaint does not contain a Count 2); |
| **Count 3**: | Fourteenth Amendment Protection Against Workplace harassment; |
| **Count 4**: | Reprisals for Efforts to Enforce Fourteenth Amendment Protections Against Workplace Harassment; |
| **Count 5**: | Fourteenth Amendment Protections Against Wrongful Termination; |
| **Count 6**: | Reprisals for Efforts to Enforce Fourteenth Amendment Protection Against Wrongful Termination; |
| **Count 7**: | Violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*; |
| **Count 8**: | Violation of Section 501 of the Rehabilitation Act; as amended, 29 U.S.C. § 701 *et seq.*; |
| **Count 9**: | Violation of Section 508 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*; |
| **Count 10**: | Reprisal in Violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*; |
| **Count 11**: | Retaliation in Violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*; |

---

[5] Gonzalez did not submit any documentation concerning the EEOC's initial dismissal of her appeal. She attached only the letter EEOC sent denying her request for reconsideration.

[6] Perdue does not challenge Counts 7–8 (charging denial of reasonable accommodations under the Rehabilitation Act), Count 10 (alleging reprisal in violation of the Rehabilitation Act), and Count 12 (raising denial of alternative work location under the Rehabilitation Act).

| **Count 12:** | Intentional Violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*; |
| **Count 13:** | Violation of Section 717 of the Civil Rights Act, 42 U.S.C. § 1981a; |
| **Count 14:** | Participation Clause of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; |
| **Count 15:** | Opposition Clause of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; |
| **Count 16:** | Civil Service Reform Act of 1978; |
| **Count 17:** | Whistleblower Protection Enhancement Act of 2012, as amended, 5 U.S.C. § 7703(b)(1)); and, |
| **Count 18:** | Whistleblower Retaliation Claim. |

### B.  Procedural History In This Court

On July 3, 2018, Gonzalez filed her Complaint (the "Original Complaint"). (ECF No. 1.) On September 26, 2018, Gonzalez filed an Amended Complaint (the "First Amended Complaint"), but without any factual assertions. (ECF No. 3.) On November 26, 2018, Perdue filed a Motion to Dismiss (the "First Motion to Dismiss") citing Gonzalez's failure to "include . . . any factual information supporting her claims." (Mem. Supp. First Mot. Dismiss. 2, ECF No. 9.) Gonzalez filed a Motion for Leave of the Court to File a More Definite Statement of the Amended Complaint. (ECF No. 13.)

On January 25, 2019, this Court concluded that the First Amended Complaint and Gonzalez's proposed additional documentation failed to satisfy Federal Rule of Civil Procedure 8 and ordered Gonzalez to file a Second Amended Complaint by February 14, 2019. (*See* Jan. 25 Order 1, ECF No. 14.) Gonzalez failed to timely file a Second Amended Complaint, so the Court dismissed the First Amended Complaint without prejudice on February 15, 2019, and directed the Clerk to close the case. (Feb. 15, 2019 Mem. Order 4, ECF No. 15.) Four days

later, on February 19, 2019, Gonzalez filed a Second Amended Complaint.[7] (ECF No. 16.) Given Gonzalez's *pro se* status, the Court directed the Court to reopen the case and reissue the summons for Perdue. (March 8, 2019 Order, ECF No. 17.)

On March 14, 2019, Gonzalez filed the first of three motions regarding what she viewed as the premature closure of her case. First, she filed a Rule 60 Motion[8] arguing that this Court's January 25, 2019 Order "was not curable by granting a second amended complaint regarding entitlement to relief because Federal Rule of Civil Procedures were previously satisfied, and the Order did not provide specific fair notice." (R. 60 Mot. 11, ECF No. 19.) Second, on March 18, 2019—four days later—Gonzalez filed a Rule 60(a)(b)(1)[9] Motion contending that the Court's finding that she filed her "complaint on February 19, 2019" amounted to "a clerical error that the Court can correct." (R. 60(a)(1) Mot. 9, ECF No. 21.) Third, on March 18, 2019, Gonzalez filed

---

[7] Gonzalez proffers that the Clerk's Office received her Second Amended Complaint on February 15, 2019. Whether the Clerk's Office received the Second Amended Complaint on February 15, 2019 or February 19, 2019 is of no moment as Gonzalez filed after the Court's February 14, 2019 deadline established in the January 25, 2019 Order.

[8] The Court presumes Gonzalez filed this motion under Rule 60(b) despite her not identifying any specific subsection of Rule 60. Because Gonzalez filed the Rule 60(a)(b)(1) Motion after her Rule 60 Motion, the Court liberally construes the Rule 60 Motion as seeking relief under Rule 60(b). Rule 60(b) allows the Court to relieve a party from:

> a "final judgment, order, or proceeding" on the grounds of "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . (6) [or] any other reason that justifies relief."

Fed. R. Civ. P 60(b).

[9] Rule 60(a)(b)(1) allows the Court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a).

a Rule 59(e)[10] Motion asking the Court "to amend its March 08, 2019 Memorandum Order regarding the reissuance of a summons" because her case "was prematurely closed." (R. 59(e) Mot. 1, 10, ECF No. 22.) Perdue responded to each motion, and Gonzalez replied.

Perdue received service of the reissued summons on April 26, 2019. Perdue filed the Partial Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Gonzalez responded, Perdue replied, and Gonzalez submitted an unauthorized sur-reply.[11]

## II. Obligation to Construe *Pro Se* Pleadings Liberally

Because Gonzalez proceeds *pro se*, the Court liberally construes her filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

---

[10] Rule 54(b) states that that any order which "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b).

[11] Given Gonzalez's *pro se* status, the Court will consider the arguments in Gonzalez's sur-reply. The Court warns Gonzalez that *pro se* litigants must abide by the Federal Rules of Civil Procedure and the Local Rules for the Eastern District of Virginia. Any untimely or unauthorized filings will not be considered in the future.

The Court will first address the Partial Motion to Dismiss. It will then turn to the Rule 60, Rule 60(a)(1), and Rule 59(e) Motions.

### III. Partial Motion to Dismiss

In the Partial Motion to Dismiss, Perdue seeks dismissal of Counts 1–6, 9, 11, and 13–18 of Gonzalez's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). For the reasons stated below, the Court will grant the Partial Motion to Dismiss in its entirety.

### A.   Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S.

at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### B. Standard of Review: Rule 12(b)(1)

Federal district courts are courts of limited subject matter jurisdiction. *United States ex rel. Vuyvuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). This Court must, as a result, determine whether it has jurisdiction over the claims at issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)).

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Alternatively, a Rule 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See id.*; *see also Adams*, 697 F.2d at 1219.

## C.     The Court Will Grant the Partial Motion to Dismiss In Its Entirety

The Court will dismiss Counts 1–6,[12] 9, 11, and 13–18 of Gonzalez's Second Amended

Complaint.  First, the Court will dismiss Counts 1–6 (the "Fourteenth Amendment Claims")[13]

because those counts are precluded by Title VII, the Rehabilitation Act, and the Civil Service

Reform Act of 1978 (the "CSRA").  Second, the Court will dismiss Count 9, the Section 508

Rehabilitation Act Claim (the "Section 508 Claim") because Section 508 of the Rehabilitation

Act does not provide a private cause of action.  Third, the Court will dismiss Count 11 because it

duplicates Count 10.  Fourth, the Court will dismiss Counts 13–15 (the "Title VII Claims")

because Title VII does not apply to disability discrimination, Gonzalez has not pled membership

in a protected class, and Gonzalez failed to exhaust her administrative remedies.  Fifth, the Court

will dismiss Count 16 (the "CSRA Claim") for lack of jurisdiction because Gonzalez failed to

exhaust her administrative remedies.  Sixth, and finally, the Court will dismiss Counts 17 and 18

("the Whistleblower Claims") for lack of jurisdiction because Gonzalez failed to exhaust her

administrative remedies.

---

[12] Gonzalez unintentionally skipped Count 2, meaning that the Court, technically, has nothing to dismiss.  The Court will refer to Counts 1–6 as a group for readability.

[13] The Fourteenth Amendment states, in relevant part, that:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. AMEND. XIV, § 1.

1.   **Gonzalez's Fourteenth Amendment Claims Fail Because They Are Precluded By Various Federal Anti-Discrimination Statutes**

The Court will dismiss Gonzalez's Fourteenth Amendment Claims (Counts 1–6) because Gonzalez does not articulate claims on which subject matter can rest, depriving this Court of subject matter jurisdiction. Gonzalez's Fourteenth Amendment Claims all flow from accusations of discrimination in federal employment. Gonzalez characterizes these claims as arising under Fourteenth Amendment protections against wrongful termination, workplace harassment, and reprisals. Congress, however, has determined that the exclusive remedies for workplace discrimination must be brought under Title VII,[14] the Rehabilitation Act,[15] and the CSRA.[16] Because those statutes provide the exclusive remedies for claims of disability, race, and other discrimination in federal employment, even taking Gonzalez's allegations as true, the Court lacks

---

[14] Title VII states that employers cannot "discriminate against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment because of such individual's" race or sex. 42 U.S.C. § 2000e-2(a)(1).

[15] The Rehabilitation Act states that:

> no otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

[16] The CSRA provides employees with procedural protections with respect to three general types of personnel actions: Chapter 23 forbids "prohibited personnel practices," such as discrimination, coercion of political activity, nepotism, and reprisal against "whistleblowers," 5 U.S.C. § 2302 (1988); Chapter 43 covers removals and reductions in grade and pay based on unacceptable performance, 5 U.S.C. § 4303 (1988); and Chapter 75 covers "adverse personnel actions"—removal, suspension, furlough, reduction in grade and pay—taken to "promote the efficiency of the service" (i.e., involving employee misconduct). 5 U.S.C. §§ 7503, 7513 (1988).

jurisdiction to hear those claims directly under the Constitution.[17] The Court addresses each of these statutory schemes in turn.

First, the Supreme Court has expressly stated that "Title VII creates the exclusive remedy for federal employees alleging employment discrimination." *Gibson v. Henderson*, 129 F. Supp. 2d 890, 903 (M.D.N.C. 2001) (citing *Brown v. General Serv. Admin.*, 425 U.S. 820, 835 (1976)). While subsequent statutes, such as the Rehabilitation Act, provide other statutory remedies for federal employees alleging discrimination, it remains true that any claim of race discrimination must be brought under Title VII, and not directly under the Fourteenth or Fifth Amendments. *See, e.g., Ford v. Donley*, 485 Fed. App'x 305, 307 (10th Cir. 2012) (reiterating that Title VII remains a federal employee's exclusive remedy for race discrimination).

Second, as to the Rehabilitation Act, because the "remedies and procedures" of the Rehabilitation Act are governed by Title VII, "various courts have also concluded that the exclusive remedy rule applied to tort claims in Title VII cases applies with equal force to disability discrimination claims brought by federal employees pursuant to the Rehabilitation Act." *Gibson*, 129 F. Supp. 2d at 903; *see also, McGuinness v. United States Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984); *Thorne v. Cavazos*, 744 F. Supp. 348, 352 n.3 (D.D.C. 1990) ("a federal employee's exclusive remedies for age and handicap discrimination are those set forth in the [Age Discrimination in Employment Act] and the Rehabilitation Act"); *Bell v. Dep't*

---

[17] The Court notes that the Fourteenth Amendment "applies only to the states, and not to the federal government." *United States v. Finnell*, 256 F. Supp. 2d 493, 498 (E.D. Va. 2003) (citing *United States v. Edwards*, 98 F.3d 1364, 1368 (D.C. Cir. 1996)). The Fifth Amendment applies to the federal government, and protects against violations of due process or equal protection. *Rostker v. Goldberg*, 453 U.S. 57, 89 n.6 (1981). Even if construed as Fifth Amendment claims, however, Counts 1–6 would falter because they do not articulate any basis for subject matter under 12(b)(1), depriving this Court of subject matter jurisdiction. Importantly, the Court could locate no authority holding that a federal employee may bring a disability claim directly under the Fifth Amendment.

*of Def.*, No. 16-02403, 2018 WL 4637006, at *14 (D.D.C. Sept. 27, 2018). The similarity between Title VII and the Rehabilitation Act noted by these courts makes plain sense. The Court finds the reasoning of these courts as to the similarities between Title VII and the Rehabilitation Act persuasive. Therefore, to the degree that Gonzalez alleges unconstitutional racial or disability discrimination by DAG, those claims can only arise under Title VII and the Rehabilitation Act.

Third, to the extent that Gonzalez alleges illegal non-discriminatory employment actions, the CSRA "is the exclusive remedy for . . . . all non-discriminatory personnel practices which result in Constitutional violations."[18] *Anderson v. Daley*, No. Civ. A. 00–109–A, 2000 WL 34551398, at *3 (E.D. Va. Apr. 26, 2000); *see also Elgin v. Dep't of the Treasury*, 567 U.S. 1, 23 (2012) ("[I]t is fairly discernible that the CSRA review scheme was intended to preclude district court jurisdiction over petitioners' [constitutional] claims").

Title VII, the Rehabilitation Act, and the CSRA provide the exclusive cause of action and remedies for Gonzalez's Fourteenth Amendment Claims. Even reading liberally and taking her allegations as true, Gonzalez's claims fail to articulate claims on which subject matter can rest. This Court lacks subject matter jurisdiction and Counts 1–6 must be dismissed.

### 2. Gonzalez's Rehabilitation Act Section 508 Claim Falters Because Section 508 Does Not Provide a Private Cause of Action

Gonzalez's Section 508[19] Rehabilitation Act Claim (Count 9) falters because that section does not provide a private cause of action for aggrieved federal employees.

---

[18] For example, the CSRA covers "'coercion of political activity, nepotism, and reprisal against so-called whistleblowers.'" *Hall v. Clinton*, 235 F.3d 202, 206 n.2 (4th Cir. 2000) (quoting *United States v. Fausto*, 484 U.S. 439, 446 (1988)).

[19] Section 508 of the Rehabilitation Act, 29 U.S.C. § 794d, ensures that "individuals with disabilities who are Federal employees . . . have access to and use of information and data that is

Several courts have held that Section 508 does not provide a private cause of action. *See Leiterman v. Johnson*, 60 F. Supp. 3d 166, 178 (D.D.C. 2014); *Latham v. Brownlee*, No. 03CA0933, 2005 WL 578149, at *9 (W.D. Tex. Mar. 3, 2015). Section 794d(f), as the enforcement mechanism of Section 508, allows enforcement of Section 508 through administrative complaints, but states that "[t]he remedies, procedures, and rights set forth in . . . [29 USCS § 794a(a)(2), (b)] shall be the remedies, procedures, and rights available to any individual with a disability filing a complaint under paragraph (1)." 29 U.S.C. § 794d(f)(3). Thus, Section 794d(f) points to Section 794(a)(2) for a list of private remedies.

For its part, Section 794a(a)(2) states that "[t]he remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 (and in subsection (e)(3) of section 706 of such Act, applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794a(a)(2). Therefore, in order to possess a private right of action outside an administrative complaint, a person must be a "recipient of federal assistance." *Id.* By its plain language, Section 794a(a)(2) does not apply to Gonzalez who is a federal employee. *See Leiterman*, 60 F. Supp. 3d at 177 n.3 (dismissing Section 508 Claim where "[p]laintiff does not argue that this provision provides Plaintiff, as a federal employee, an avenue by which to enforce Section 508 . . . . [in] fact, he concedes the opposite").

Rehabilitation Act Section 508 limits civil actions to the remedies in Section 794a(a)(2). Neither remedy provides a private cause of action for Gonzalez as a federal employee. As such, Count 9, the Rehabilitation Act Section 508 Claim, even read liberally and taking Gonzalez's

comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities." 29 U.S.C. § 794d(a)(1)(A)(i).

allegations as true, must be dismissed for lack of jurisdiction as it fails to state a claim upon which subject matter jurisdiction can lie.

### 3. Count 11 Will Be Dismissed Because It Duplicates Count 10

Count 11 of the Second Amended Complaint duplicates Count 10 and will be dismissed for failure to state a plausible independent ground of relief. In Count 10 of the Second Amended Complaint, Gonzalez alleges that DAG Employees engaged in "Reprisal[s] in Violation of the Rehabilitation Act of 1973, as amended, (29 U.S.C § 701 *et seq.*)." (SAC 20.) In support of that claim, Gonzalez alleges that she "was reprised [sic] against by [the program director] for requesting the reasonable accommodation of telework," relying upon a number of emails and alleged conversations relating to her supervisor's rejection of her requests. (*Id.* ¶ 80.) Perdue does not seek to dismiss Count 10.

Count 11 brings a claim for "Retaliation in Violation of the Rehabilitation Act of 1973, as amended, (29 U.S.C § 701 *et seq.*)." (*Id.* 23.) Count 11 is one paragraph and reads in its entirety: "85. Paragraphs 1–84 are incorporated herein." (SAC ¶ 85.) Other than substituting the word "Retaliation" for "Reprisal," Gonzalez does not allege any facts or advance a separate ground for relief from that in Count 10. Count 11 duplicates Count 10 and fails to state an independent ground for relief. *See Stone v. Town of Cheverly*, No. GJH-17-353, 2017 WL 3887857, at *8 n.13 (D. Md. Sept. 5, 2017) ("[Plaintiff] states his claim as 'EEO Reprisal' rather than 'EEO Retaliation,' however, the claims are identical and will thus be evaluated under the same framework"). Accordingly, Count 11 will be dismissed for failure to state a claim under Rule 12(b)(6).

**4.    Gonzalez's Title VII Claims Falter Because Title VII Does Not Apply to Disability Discrimination and She Failed to Exhaust Her Administrative Remedies**

The Second Amended Complaint fails to state a claim under Title VII (Counts 13–15) because: (1) Gonzalez does not allege membership in a protected class; (2) Title VII does not apply to disability discrimination; and, (3) Gonzalez failed to exhaust her administrative remedies under Title VII, depriving this Court of jurisdiction.

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer— . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To raise a Title VII claim, a plaintiff must allege facts sufficient to demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)) (dismissing appeal and remanding to district court upon holding that the district court's order did not constitute a final order). Although "a Title VII plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, . . . factual allegations must be enough to raise a right to relief above the speculative level." *Forgus v. Mattis*, 753 F. App'x 150, 152 (4th Cir. 2018) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Gonzalez's Title VII claims appear to rest on her "vehemently" opposing "falsely accusing [her coworkers] of racial discrimination" despite being "pressured" to do so. (SAC ¶ 91.) Gonzalez fails to state a claim under Title VII on at least three grounds. First, she does

not allege facts sufficient to demonstrate "membership in a protected class" as defined under Title VII. *Goode,* 807 F.3d at 626; 42 U.S.C. § 2000e-2(a)(1) (forbidding discrimination "against any individual . . . because of such individual's race, color, religion, sex, or national origin.").

Second, Title VII does not apply to disability claims. *See Hockaday v. Brownlee,* 370 F. Supp. 2d 416, 421 (E.D. Va. 2004), *aff'd,* 119 F. App'x 567 (4th Cir. 2005) ("Two federal statutes provide a cause of action for disability discrimination: the Americans with Disabilities Act of 1990 . . . and the Rehabilitation Act of 1973.") Indeed, Gonzalez clarifies that she "did not believe [her co-workers] were discriminat[ing] against [her] because of [her race]" and instead informed her supervisor that the discriminatory actions "occurred due to disability discrimination." (SAC ¶ 90.)

Third, even if Gonzalez claims were read liberally to allege retaliation for opposing "an unlawful employment practice" under Title VII, she failed to exhaust her administrative remedies as to that claim. 42 U.S.C. § 2000e-2(a)(1). Title VII requires complainants "to submit information to the EEOC and to wait a specified period before commencing a civil action." *Fort Bend Cty. v. Davis,* 139 S. Ct. 1843, 1851 (2019). This administrative requirement is "mandatory in the sense that a court must enforce the rule if a party properly raises it." *Id.* at 1849 (internal citations omitted). Here, Gonzalez's EEOC Complaint did not raise the issue of race discrimination, (*see* SAC Ex. 10, Complaint of Employment Discrimination), and Perdue properly raised the issue in the Partial Motion to Dismiss.[20] For these reasons, even assuming

---

[20] Gonzalez did not submit the content of her EEOC appeal from DAG's dismissal of her original complaint. Her original complaint with DAG did not raise any issues of race discrimination. She claimed only "disability discrimination, harassment, retaliation and reprisal" claims. (*See* SAC Ex. 10, Complaint of Employment Discrimination.)

the truth of her allegations, Gonzalez has failed to state a plausible claim to relief under Title VII and Rule 12(b)(6), and Counts 13–15 must be dismissed.

### 5. The Court Lacks Jurisdiction Over Gonzalez's CSRA Claim Because She Failed to Exhaust Her Administrative Remedies

Gonzalez's CSRA Claim (Count 16) will be dismissed because she failed to exhaust her administrative remedies. The CSRA "mandates that a claimant exhaust his [or her] administrative remedies before filing a civil action." *Seweryniak v. Sessions*, No. 3:17CV237, 2018 WL 1220845, at *5 (E.D. Va. Jan. 31, 2018), *adopted by*, *Seweryniak v. Sessions*, No. 3:17CV237, 2018 WL 1212539, at *5 (E.D. Va. Mar. 8, 2018). Under the CSRA, the claimant must first appeal to the "Merit Systems Protection Board (MSPB) pursuant to a 'comprehensive system' for resolving personnel decisions involving federal employees established by Congress." *Bennett v. SEC*, 844 F.3d 174, 180 (4th Cir. 2016).

Even assuming the truth of Gonzalez's allegations, Gonzalez does not plead or otherwise submit documentation indicating that she first adjudicated her claim with the MSPB. (*See also* SAC Ex. 10, Complaint of Employment Discrimination). Because Gonzalez failed to exhaust her administrative remedies, Claim 16, brought under the CSRA, will be dismissed because she fails to state a claim under which jurisdiction can lie under Rule 12(b)(1).

### 6. The Court Lacks Jurisdiction Over Gonzalez's Whistleblower Claims Because She Failed to Exhaust Her Administrative Remedies

The Court similarly lacks jurisdiction over Gonzalez's Whistleblower Claims (Counts 17–18). As with the CSRA, courts may review a claim or claims brought pursuant to the Whistleblower Protection Enhancement Act of 2012 only after the MSPB has issued a final decision on the claim or claims. *See* 5 U.S.C. § 1214(c)(1)(2000). When a claimant fails to submit his or her claim to the MSPB, dismissal is not only appropriate, but mandatory. *See*

*Harris v. Evans*, 66 Fed. App'x 465, 466 (4th Cir. 2003) (finding that because a district court "lacked jurisdiction to hear [plaintiff's] whistleblower claim in the first instance, it also lacked the power to excuse her failure to exhaust her administrative remedies").

Moreover, Gonzalez did not raise her claims under the Whistleblower Protection Enhancement Act of 2012 in her EEOC Complaint. (*See* SAC Ex. 10, Complaint of Employment Discrimination). Because Gonzalez failed to exhaust her administrative remedies and has therefore failed to state a claim under which jurisdiction can lie, the Court lacks jurisdiction and must dismiss Counts 17–18.

The Court now turns to Gonzalez's Rule 60, Rule 60(a)(b)(1), and Rule 59(e) Motions.

## IV. Analysis: The Court Will Deny the Rule 60, Rule 60(a)(b)(1), and Rule 59(e) Motions

The Court will deny Gonzalez's Rule 60 Motion, (ECF No. 19), Rule 60(a)(b)(1) Motion, (ECF No. 21), and Rule 59(e) Motion, (ECF No. 22). Gonzalez filed her Rule 60 and Rule 60(a)(b)(1) motions seeking relief from the Court's February 15, 2019 Memorandum Order, (ECF No. 15), dismissing her First Amended Complaint without prejudice, and closing the case. Gonzalez also filed her Rule 59(e) Motion asking the Court "to cancel its order to 'REISSUE summons for Perdue'" in its March 8, 2019 Order reopening the case. (R. 59(e) Mot. 10.) For the foregoing reasons, each motion founders.

### 1. Rule 60 and Rule 60(a)(b)(1) Motions

As previously discussed, the Court's January 25, 2019 Order required Gonzalez to file her Second Amended Complaint by February 14, 2019. When she failed to do so, the Court dismissed the case without prejudice in the February 15, 2019 Memorandum Order.

First, Gonzalez's Rule 60 Motion, read liberally, falters.[21] Rule 60(b) allows the Court to relieve a party from:

> a "final judgment, order, or proceeding" on the grounds of "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . (6) [or] any other reason that justifies relief."

Fed. R. Civ. P 60(b). Providing relief under Rule 60(b) constitutes "an extraordinary remedy that should not be awarded except under exceptional circumstances." *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012) (citing *Ackermann v. United States*, 340 U.S. 193, 202 (1950)). The movant must establish "'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (quoting *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)). Only after a showing of these "exceptional circumstances" may a Court find relief under one of the six factors. *Mayfield*, 674 F.3d at 378.

Gonzalez does not specify any exceptional circumstance that would justify relieving her from this Court's February 15, 2019 Memorandum Order. The Court reopened her case, in consideration of her *pro se* status, less than a month later. Because Gonzalez has received the relief she requested, even construing her pleadings liberally, her Rule 60 Motion is moot and will be denied.

Second, Gonzalez's Rule 60(a)(b)(1) Motion must fail. Rule 60(a) of the Federal Rules of Civil Procedure provides: "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.

---

[21] Gonzalez does not specify whether her Rule 60 Motion seeks relief under Rule 60(a) or Rule 60(b). Because Gonzalez filed the Rule 60(a)(b)(1) Motion after her Rule 60 Motion, the Court liberally construes the Rule 60 Motion as seeking relief under Rule 60(b).

The court may do so on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a).

Gonzalez contends that her Second Amended Complaint was delivered on February 15, 2019,

but the Clerk's Office did not docket the filing until February 19, 2019. Regardless of whether

the Clerk's Office received the Second Amended Complaint on February 15, 2019 or February

19, 2019, Gonzalez does not allege, nor can she, that she filed her Second Amended Complaint

on or before February 14, 2019, the deadline in the January 25, 2019 Order. No clerical error

exists in the February 15, 2019 Memorandum Order dismissing the case without prejudice for

failure to timely file the Second Amended Complaint, and the Rule 60(a)(b)(1) Motion will

be denied.

### 2.    Rule 59(e) Motion

Gonzalez's Rule 59(e) Motion will be denied as well. Rule 59(e) applies only to final

judgments. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th

Cir. 1991); *see also*, *Shanklin v. Seals*, No. 3:07cv319, 2010 U.S. Dist. LEXIS 43217, at *7 (E.D.

Va. May 3, 2010). Because the Court's March 8, 2019 Order reopening the case was not a final

judgment, Rule 59(e) does not apply.

Even if construed liberally as a Rule 54(b)[22] motion for reconsideration, Gonzalez's

motion would fail. Motions for reconsideration are limited to circumstances in which:

> the Court has patently misunderstood a party, or has made a decision outside the
> adversarial issues presented to the Court by the parties, or has made an error not of
> reasoning but of apprehension . . . [or] a controlling or significant change in the law
> or facts since the submission of the issue to the Court [has occurred]. Such
> problems rarely arise and the motion to reconsider should be equally rare.

---

[22] Rule 54(b) states that that any order which "adjudicates fewer than all the claims or the
rights and liabilities of fewer than all the parties does not end the action as to any of the claims or
parties and may be revised at any time before the entry of a judgment adjudicating all the claims
and all the parties' rights and liabilities." Fed R. Civ. P. 54(b).

*Shanklin,* 2010 U.S. Dist. LEXIS 43217, at *9 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Gonzalez does not meet her heavy burden even if her motion is read as a motion for reconsideration. On March 8, 2019, the Court directed the Clerk's Office to reissue summons despite Gonzalez's failure to timely file her Second Amended Complaint. Gonzalez does not indicate how the Court misunderstood either party, made a decision outside the issues presented to the court, or made an error of apprehension. At most, Gonzalez's Rule 59(e) Motion urges the Court to cancel the order reissuing summons because, in Gonzalez's view, the February 15, 2019 Memorandum Order was flawed. But Rule 59(e) motions are not a vehicle to urge the Court to "rethink what the Court had already thought through—rightly or wrongly." *Id.* Therefore, Gonzalez's Rule 59(e) Motion will be denied.

## V. Conclusion

For the foregoing reasons, the Court grants the Partial Motion to Dismiss, (ECF No. 33), and dismisses Counts 1–6, 9, 11, and 13–18 of Gonzalez's Second Amended Complaint. Counts 7, 8, 10, and 12—brought under the Rehabilitation Act—remain. The Court denies Gonzalez's Rule 60 Motion, Rule 60(a)(b)(1) Motion, and Rule 59(e) Motion. (ECF Nos. 19, 21, 22.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: **3/17/20**
Richmond, Virginia